**Jimmy Ray JONES, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 07–93–0370–CR.

Court of Appeals of Texas,
Amarillo.

Jan. 16, 1996.

Kenneth D. Carden, Las Colinas, for appellant.

Daniel D. Guess, Shannon Ross, Bill Fay, Dallas, for appellee.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

DODSON, Justice.

Upon his guilty plea pursuant to a negotiated bargain, appellant Jimmy Ray Jones was convicted of possession of less than twenty-eight grams of cocaine. Upon finding the indictment's two enhancement averments true, the court sentenced appellant to twenty-five years confinement in the Texas Department of Criminal Justice, Institutional Division. In a single point of error, appellant contends the trial court erred in failing to suppress evidence obtained from the search of the premises because the search warrant failed to particularly describe the place to be searched. Affirmed.

We will first address the State's contention that we lack jurisdiction over the appeal. In his appeal notice, appellant stated that he pleaded guilty pursuant to a plea bargain and was sentenced pursuant to that agreement. The appeal notice recited that appellant filed a written "Motion to Suppress Evidence," and the court overruled it.

When the pretrial hearing was called, the judge stated that he understood they were there on the "Defendant's Motion to Suppress Evidence." After a hearing on the motion and arguments of counsel, the trial judge said he was "going to deny the Motion to Suppress." At the guilty plea hearing, defense counsel asked the court to inform appellant that he had the right to appeal "if" there was a previously filed motion before trial. The court then informed appellant that he could appeal from written motions filed before the guilty plea hearing.

Although a statutory right of appeal, subject to applicable rules, is granted by article 44.02, Texas Criminal Procedure Code Annotated (Vernon 1979), an appeal from a plea bargained conviction is now governed and restricted by Rule 40(b)(1), Texas Rules of Appellate Procedure. The rule specifically provides that:

[Notice of appeal] shall be sufficient if it shows the desire of the defendant to appeal from the judgment or other appealable order; but if the judgment was rendered upon his plea of guilty or nolo contendere pursuant to Article 1.15, Code of Criminal Procedure, and the punishment assessed does not exceed the punishment recommended by the prosecutor and agreed to by the defendant and his attorney, in order to prosecute an appeal for a nonjurisdictional defect or error that occurred prior to entry of the plea *the notice shall state that the trial court granted permission to appeal or shall specify that those matters were raised by written motion and ruled on before trial.* (Emphasis added).

Recently, the Court of Criminal Appeals interpreted Rule 40(b)(1) in connection with the procedural requirements regarding a defendant who appeals from a plea-bargained conviction. *Davis v. State*, 870 S.W.2d 43, 45 (Tex.Cr.App.1994). It determined that in order to prosecute an appeal for a nonjurisdictional defect occurring before or after the plea, the notice of appeal must state the trial judge granted permission to appeal or must specify that the matters were raised by written motion and ruled on before trial. *Id.* at 45–6. Otherwise, the appellate court has no jurisdiction to review the appealing party's pretrial suppression motion, or nonjurisdictional issues. *Id.; see also Lyon v. State*, 872 S.W.2d 732, 736 (Tex.Cr.App.1994).

█ Here, appellant pleaded guilty and was sentenced pursuant to a plea bargain agreement, and his appeal notice recited this information. Appellant's notice of appeal stated that the trial court overruled his written pretrial motion. Under these circum-

stances, appellant has complied with Texas Rule of Appellate Procedure 40(b)(1). Hence, we have jurisdiction over the appeal. Moreover, although the appellate record does not contain the written pretrial motion, we conclude that one existed and will resolve appellant's point of error.

In his sole point of error, appellant contends the trial court erred in suppressing evidence obtained from the search of the premises because the search warrant failed to particularly describe the place to be searched. We disagree.

In relevant part, the affidavit for search warrant provided:

1. There is in Dallas County, Texas, a suspected place and premises described and located as follows: Apartment # 104 located in a two-level, brown brick apartment complex addressed as 2712 Holmes Street in the City of Dallas, Dallas County, Texas.

    *     *     *     *     *     *

3. Said suspected place and premises are in possession, control and occupation by each of the following persons: An unknown Black Female approximately 29 years in age, weighing approximately 100 pounds, being 5' in height, and person or persons whose names, ages, identities, and descriptions are unknown to the Affiant.

4. It is the belief of Affiant, and he hereby charges and accuses, that: The Black Female described above in paragraph # 3 and person or persons whose names, ages, identities, and descriptions are unknown to the Affiant, did on March 15, 1993, possess a quantity of Cocaine inside the apartment described in paragraph # 1 located at 2712 Homes Street # 104 in the City of Dallas, Dallas County, Texas.

I, Affiant received information from a confidential and reliable informant who personally observed the Black Female described above in paragraph # 3 was on, March 15, 1993 in possession of a quantity of Cocaine inside the apartment described in paragraph # 1 located at 2712 Homes Street # 104 . . . .

The search warrant authorized peace officers to enter the suspected place and premises described in the supporting affidavit and search for the personal property described in the affidavit and seize it.

William Larsen, a Dallas police officer assigned to the narcotics division, testified that on March 18, 1993, he signed the instant search warrant affidavit and obtained most of the information from a reliable confidential informant. Larsen testified that he participated in the execution of a search warrant at 2712 Holmes Street, apartment 104 in Dallas County.

On cross-examination, Larsen said he had probable cause to search 2712 Holmes Street, apartment 104 and secured a search warrant for that unit. Larsen testified that about fifteen officers were used for the search because there was a large number of people outside the location, the police had numerous complaints that drugs were being sold there, and the police expected other traffickers to be present there. Larsen reported that appellant was arrested in the first apartment on the second floor. Appellant was seated in the living room with five or six other people.

When the confidential informant personally showed Larsen the suspected premises, they were about two blocks away from the complex. As they drove by, the informant pointed to the upstairs right-hand corner of the apartment and told them it was apartment number 104. Larsen reported that they looked at the door after the warrant was executed. Larsen said the first number of the apartment on the door could be read or mistaken either as a "1" or "2." Larsen reported that the defense photographs depict what they saw when the warrant was executed.

The defense photographs depict eight units, four upstairs and four downstairs apartments. The downstairs apartment is clearly marked as "104." Nevertheless, the photographs show that the right upstairs apartment, the apartment searched, could be read as "104" or "204."

Appellant testified he resided at 2712 Holmes for the last twelve years. Appellant resided in apartment 101 on the date of his arrest. Appellant reported that all the num-

bers on the second floor start with the number 2. Appellant reported that the numbers were painted last year and that the apartment where appellant was arrested has always been number 204.

Appellant acknowledged his presence at the apartment when the officer searched the apartment. Appellant stated that four women resided in the apartment. Appellant reported that Nicole and her two nieces lived in the apartment searched. The prosecutor read the description given in the warrant of the person in possession of cocaine and asked which of the three women was described in the warrant. Appellant said that the description matched a person by the name of Gina.

■■■■ The test for ascertaining the adequacy of a search warrant's description of the place to be searched is whether the place described is sufficient to inform officers of the place where they are to conduct the search. *Haynes v. State,* 475 S.W.2d 739, 740 (Tex.Cr.App.1971); *Mansell v. State,* 756 S.W.2d 95, 98 (Tex.App.—San Antonio 1988, pet. ref'd). Where the search warrant is for a multi-unit dwelling, the place described must contain adequate guidelines to apprise the officers executing the warrant of the particular unit to be searched. *Haynes v. State,* 475 S.W.2d at 740; *Mansell v. State,* 756 S.W.2d at 98.

■■■■ The identity of the person named as the occupant of the apartment controls over any misstated apartment number. *Mansell v. State,* 756 S.W.2d at 98. The purpose of the state and federal constitutional requirements that the place to be searched must be particularly described is to minimize the risk that peace officers who execute search warrants will mistakenly search a place other than the place intended by the magistrate. *Id.*

There appears to be no Texas case directly on point. Nevertheless, the federal courts have taken into account facts known by the executing officer but not expressly stated in the supporting affidavit, such as where (1) an officer involved in the search was the affiant to the search warrant's supporting affidavit, and (2) the evidence shows that the same officer had previously been to the premises considered covered by the warrant. *United States v. Gordon,* 901 F.2d 48, 49–50 (5th Cir.), *cert. denied,* 498 U.S. 981, 111 S.Ct. 510, 112 L.Ed.2d 522 (1990) (where the warrant contained an incorrect address and affiant-officer had been to the address before search and assisted in execution the search warrant). *United States v. Burke,* 784 F.2d 1090, 1092–93 (11th Cir.), *cert. denied,* 476 U.S. 1174, 106 S.Ct. 2901, 90 L.Ed.2d 987 (1986) (upheld the validity of the warrant, though it contained an incorrect address because affiant accompanied the executing officers on the search and pointed out the proper location); *United States v. Turner,* 770 F.2d 1508, 1510–11 (9th Cir.1985), *cert. denied,* 475 U.S. 1026, 106 S.Ct. 1224, 89 L.Ed.2d 334 (1986); *United States v. Clement* 747 F.2d 460, 461 (8th Cir.1984); *United States v. Gitcho,* 601 F.2d 369, 372 (8th Cir.), *cert. denied,* 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979).

This rule is also in accord with a number of sister state courts. *State v. Bailey,* 446 So.2d 352, 354–55 (La.App.1984); *State v. Smith,* 344 N.W.2d 505, 507–08 (S.D.), *cert. denied,* 469 U.S. 841, 105 S.Ct. 144, 83 L.Ed.2d 83 (1984); *Commonwealth v. Demogenes,* 14 Mass.App.Ct. 577, 441 N.E.2d 545, 547–48 (1982); *State v. Gonzales,* 314 N.W.2d 825, 827 (Minn.1982); *State v. Carlson,* 101 Idaho 598, 618 P.2d 776, 777 (1980); *State v. Hart,* 100 Idaho 137, 594 P.2d 647, 648–49 (1979); *Commonwealth v. Appleby,* 586 S.W.2d 266, 269 (Ky.App.1978).

■■ Here, Larsen was the affiant to the supporting affidavit and accompanied other officers in executing the warrant. A confidential informant pointed to the upstairs right-hand corner of the apartment and told Larsen the unit number was 104. The search warrant detailed a specific address and noted that the place was a brown brick apartment complex. The search warrant gave a specific address. Hence, the search warrant could have only gone to one of two apartment units in one specifically described eight-unit Dallas complex. Under these circumstances, we find that the search warrant was adequate. Moreover, since the apartment searched was the one described by the

number 104 or 204, the description of the apartment occupant prevails over a misstated apartment number. Since appellant readily identified the suspected person described in the affidavit as "Gina," her physical identity description controlled over any unit number mistake. Additionally, the officers executed the search warrant on the proper unit. Hence, point of error one is overruled.

Accordingly, the judgment is affirmed.